Pro Se 1 (Rev. 09/16) Complaint for a Civil Case

**RECEIVED**
NOV 1 0 2016
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
## for the
### Western District of Texas

Case No. **SA16CA1135 XR**
(to be filled in by the Clerk's Office)

Neil Chadwick

*Plaintiff(s)*
(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)

-v-

Universal Health Services, Inc.
Laurel Ridge Treatment Center

*Defendant(s)*
(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)

Jury Trial: *(check one)* ☒ Yes ☐ No

## COMPLAINT FOR A CIVIL CASE

**I.   The Parties to This Complaint**

  **A.   The Plaintiff(s)**

  Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

  | | |
  |---|---|
  | Name | Neil Chadwick |
  | Street Address | 202 Rosemont Drive |
  | City and County | San Antonio, Bexar |
  | State and Zip Code | Texas, 78228 |
  | Telephone Number | 210-485-3895 |
  | E-mail Address | |

  **B.   The Defendant(s)**

  Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Pro Se 1 (Rev. 09/16) Complaint for a Civil Case

Defendant No. 1
- Name: Universal Health Services, Inc.
- Job or Title *(if known)*:
- Street Address: 367 S Gulph Road
- City and County: King of Prussia, Mongomery
- State and Zip Code: Pennsylvania, 19406
- Telephone Number: (610) 768-3300
- E-mail Address *(if known)*:

Defendant No. 2
- Name: Texas Laurel Ridge Hospital, LP dba Laurel Ridge Treatment Center
- Job or Title *(if known)*:
- Street Address: 17720 Corporate Woods Drive
- City and County: San Antonio, Bexar
- State and Zip Code: Texas, 78259
- Telephone Number: (210) 491-9400
- E-mail Address *(if known)*:

## II. Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☒ Federal question        ☐ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A. If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

42 U.S. Code § 1985, The right to petition the government for redress of grievances and to equal protection, 1990 American with Disabilities Act, 2009 Elder Protection Act, and ostensibly diversity of citizenship ("nerve center" test)

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

1. The Defendant, Laurel Ridge Treatment Center (hereinafter referred to as "LTRC" or "Laurel Ridge") is a for-profit mental health facility in San Antonio, Texas. The facility offers inpatient and outpatient treatment for substance abuse and mental health issues. By way of participating in government-funded programs, it is subject to both state and federal laws and regulations.

2. Laurel Ridge is owned, staffed, and operated by Universal Health Services Inc. (hereinafter referred to as "UHS") headquartered in Pennsylvania. UHS is the largest "facility-based" behavioral health provider in the country a net worth of over $12.5B. Laurel Ridge was acquired by UHS in 2010.

3. The Plaintiff, Neil Chadwick, is a "qualified individual" as defined by the 1990 Americans with Disabilities Act with mental and physical impairments. In all times herein, he was a resident of Bexar County, Texas.

### A: Personal Statement (Exhibit 1)

4. On Thursday, November 13th, 2014, I was strangled and left for dead by another patient in a vicious unprovoked attack while left unsupervised in my room while at Laurel Ridge Treatment Center, in San Antonio. Laurel Ridge also violated my rights, abused me, and has made efforts to conceal this incident.

5. On November 9th, 2014, I voluntarily admitted myself to Laurel Ridge for an acute psychiatric condition. My treating psychiatrist, Dr. Nadeem Haider, wrote orders to put me under "continuous skilled nursing observation." The unit I was in, Sabine, held mostly low-functioning, psychotic and violent patients. I asked to be transferred to a different unit, however, it didn't happen. On the fourth day, a patient shoved and tried to punch me however other patients came to my defense. Afterward, the staff agreed to transfer me to a different unit for safety reasons.

6. Around 3pm the next day, a medical temp named Sonia unlocked the door and instructed me to enter an unoccupied north wing of the unit and told to retrieve my possessions and bring them to the nurse's station. I was recovering from lumbar fusion surgery 2 months prior and was under doctor's orders not to lift, bend, carry, or squat. I made a reasonable accommodation request for assistance to help pack my belongings. However, Sonia said they were "short staffed" and to "go now." I was forced to make multiple trips, and on my final trip I encountered a 32-year-old male patient whom I recognized. I asked for his help and he followed me into my room.

7      Without warning, he jumped me from behind and applied a military-style "rear naked choke" while pushing my head forward with tremendous force. I attempted to resist; I tried to scream; no sound came out. I lost consciousness within seconds.

8      An unknown amount of time later, staff members found me prone and unconscious on the floor of my room. They asked me what happened and I told them I had been strangled and by whom. I was in excruciating pain, unable swallow, and had partial paralysis of one leg. My back was injured, presumably from being dropped. While I was on the ground, I overheard a staff member saying that he had done this to another patient! They called a medical transportation company that took me to the Methodist Stone Oak emergency room.

9      The emergency room doctor ordered a CT of my neck and an x-ray of my back. They did not complete the "strangulation checklist" nor do thorough examination. An employee of Laurel Ridge with me the entire time and prevented me from talking to the police. They declared that my injuries were not life-threatening and I was transported back to Laurel Ridge and put into the adjacent Colorado unit.

10      After getting back, I tried to call 911 from the patient phone however the number was blocked. I asked the nurse to call but she refused. She wouldn't give me the last name of my attacker claiming it was a HIPPA violation. I tried to sleep that night but couldn't. I put in a written request to be discharged.

11      The next day, I was given the police non-emergency number and asked them to send a detective. After waiting for an hour, I called back twice but was finally told "talk to the staff" and got disconnected. I informed the nurse of this; however, I was told I need to "deal with it when you get home."

12      I went back to my room and tried to lie in bed when three UHS staff members entered my room and demanded I move to the day room. I pleaded with them be allowed to stay in bed to rest a recover from my injuries. They said they had nobody to watch me here and I could lie down on the couch in the day room. I asked them to call my doctor. The mental health tech got angry. He grabbed my mattress and dumped me onto the floor and starting dragged me out by my arms further aggravating my injuries. The other two staff members did not intervene.

13      Hours later, I met with my doctor and allowed to leave. My mother picked me up and she spoke with the patient advocate, however the advocate was evasive. Later, I went to an urgent care center for my injuries. The doctor said he had never seen choking injuries as severe as mine. While being examined, I developed chest pains and was sent by ambulance to an emergency room at the doctor's insistence. There, I finally got the attention of a police officer and made a report.

14      I returned to my apartment and tried to return to life, however, I was experiencing flashbacks, personality changes, panic attacks, and insomnia. I admitted myself into a different (reputable) psychiatric hospital for over a week to recover from my first hospitalization.

15      The next 30 days were very difficult. Evaluation of my vocal cords, swallowing and speech indicated the need for speech therapy which I could not afford. I was unable to turn my head or sleep without a neck brace because I was in so much pain. A new numbness developed in my arms. If was able to turn my neck it would grind and crack. A large, painful bruise developed under my throat that took over a month to fade.

16      The San Antonio police required me to go downtown to file charges and I was unable to do so for at least 6 weeks. I was afraid of running into my attacker and rarely went in public. The homicide detective had an extremely difficult job investigating due to incomplete and inaccurate information. He was arrested five months later, but only after he assaulted another victim.

17      Since then I've had tremendous difficulty with severe social anxiety, PTSD, flashbacks, hypervigilance, and depression. Approximately a year after the assault, I was informed by a surgeon that a titanium screw was broken in my hardware of my neck (missed in the ER) and the newly formed bone between the C6-C7 neck vertebrae and had degenerated into a "persistent nonunion." I was also told I have failed back syndrome. My sleep continues to very difficult because of neck and back pain. I've also developed a phobia of people walking behind me.

18      I've still unable to obtain my full medical records or hire an attorney and still trying to figure out why this was allowed to happen. I have little resort other than to file this claim to try to make things whole.

## B: Causes of Action

### COUNT 1: CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS (42 U.S.C. § 1985)

1. Denied repeated requests to contact police (a protected right).
2. Staff had a legal obligation to report this crime (ie. Texas Penal Code § 38.171)
3. LRTC provided false witness testimony to investigators.
4. Refusing to provide the suspect's identity which hampered the investigation and endangered the Plaintiff.
5. Impeded the arrest of the suspect which endangered public safety and permitted further acts of violence.
6. Withholding protected health information.
7. Further acts of obstruction.
8. Retaliatory actions to further degrade, humiliate, and discredit the Plaintiff/witness.
9. The above actions have significantly interfered with the Plaintiff's 14th Amendment rights.

### COUNT 2 : ASSAULT ON INDIVIDUAL WITH DISABILITIES

1. Around 3:15pm November 13, 2014, staff gave entry to a dangerous individual into the north wing of the Sabine unit along with the Plaintiff.

2. The staff had a duty to protect the Plaintiff from harm.
3. The staff had the duty to provide assistance and escort when requested.
4. Staff should have reasonable foreseen the danger.
5. Staff failed to warn the Plaintiff of a known danger.
6. These omissions are the proximate cause leading to the attempted strangulation of the Plaintiff.

### COUNT 3: ASSAULT ON INDIVIDUAL WITH DISABILITIES

1. On Friday November 14th, 2014, the Plaintiff was lying in bed when several employees of UHS demanded he move to the day room.
2. The Plaintiff requested to remain in bed while he recovered from his injuries, as was his right.
3. The staff members denied this right.
4. A tech then approached and then grabbed his mattress with force and malice causing him to fall onto the floor further aggravating his injuries.
5. The tech was acting under the direction and guidance of senior employees.
6. The employees 'actions were in pursuant of polices established by the facility.
7. The employees' actions were in violation of state administrative code and common decency.

### COUNT 4: NEGLIGENCE

1. Failing to protect from harm when it was reasonable and prudent to do so.
2. Failing to provide "continuous skilled nursing observation" as ordered by the physician.
3. Failing to train and supervise nursing teams on proper safety procedures, patient's rights, and ADA compliance.
4. Failing to provide the assistance required to accommodate physical disabilities.
5. Failing to take adequate steps to ensure safety, adequate staff to manage over 24 mentally ill patients, preventing patients from entering other patients' rooms, and performing safety checks at regular intervals.
6. The defendants owed the plaintiff a duty to provide the standard of care that an ordinary prudent person would provide in similar circumstances.
7. Negligence *per se* for not reporting the crime.

### COUNT 5: VIOLATION OF PATIENT'S BILL OF RIGHTS (Texas Health & Safety Code § 321)

1. Denied First Amendment right to petition redress of grievances.
2. Denied Fourteenth Amendment right to due process and equal protection.
3. Failing to provide protection from exploitation and abuse.
4. Failing to provide a safe environment in which to recover.
5. Failing to treat patients with dignity and respect in a supportive, therapeutic environment.
6. Inhumane treatment by staff on multiple occasions.
7. Other violations.

## IV. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

### A. Declarative:
1. Relief from the procedural requirements of Chapter 74 of the Texas Civil Practice and Remedies Code as it constitutes an undue burden that infringes on the Plaintiff's rights while being tangential to the substance of the claim.
2. Declare LRTC to be a "residential care provider that arranges for, or directly provides, long-term care" and subject to the crime reporting requirements of the Elder Justice Act (Soc. Sec. Act §1150B).

### B. Compensatory:
1. Past and future costs of treatment for physical, mental, and emotional trauma.
2. Past and future costs of home care, assistive devices, personal services, and transportation.
3. $500,000 in lost earning capacity.
4. Reimbursement of expenses billed to patient and Medicare.
5. Financial compensation for mental anguish, pain and suffering.
6. Financial compensation for damage to reputation, humiliation, and loss of enjoyment of life.
7. Financial compensation for the perpetrator's other victim(s).
8. Punitive damages sufficient to deter this from EVER happening again.

### C. Injunctive:
1. Civil Money Penalties to fund Elder Justice Initiatives.
2. Request review of Center for Medicare and Medicaid Services guidelines.
3. Request review of crime reporting, investigation, and prevention procedures.

### D. Other:
1. And such other relief as the Court may deem appropriate.

**V.     Certification and Closing**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

**A.     For Parties Without an Attorney**

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:  11-10-2016

Signature of Plaintiff  *Neil Chadwick*
Printed Name of Plaintiff  Neil Chadwick